Cape v. Forest Products Co.

C. W. CAPE, EMPLOYEE-PLAINTIFF v. WNC PALLET & FOREST PROD-
    UCTS COMPANY (SELF-INSURED), EMPLOYER-DEFENDANT

No. 7430IC783

(Filed 20 November 1974)

1. Master and Servant § 94— workmen's compensation — failure of In-
    dustrial Commission to make findings

    Industrial Commission's conclusion that plaintiff was entitled to
    additional compensation for temporary total disability was erroneous
    where the Commission failed to make any findings of fact regarding
    plaintiff's disability during the period in question.

2. Master and Servant § 77— workmen's compensation — refusal of em-
    ployee to submit to physical exam — suspension of compensation

    Evidence presented to the Industrial Commission and findings
    made by the Commission lacked the specificity necessary for the court
    to determine whether plaintiff's right to compensation was suspended
    by his refusal to undergo a myelographic diagnostic examination. G.S.
    97-27.

APPEAL by defendant from an opinion and award of the
Industrial Commission (Commission) filed on 30 April 1974.
Heard in the Court of Appeals on 23 October 1974.

This is a proceeding under the Workmen's Compensation
Act wherein the plaintiff, C. W. Cape, seeks compensation from
the defendant, WNC Pallet & Forest Products Company, for
injuries sustained by accident on 5 July 1971 arising out of
and in the course of his employment with the defendant.

In August of 1971, the defendant admitted its liability and
agreed to pay plaintiff compensation for temporary total dis-
ability. (This agreement between the parties for the payment
of temporary total disability was not made a part of the record
on appeal.) The defendant suspended payment of compensation
to the plaintiff on 22 February 1972 when it allegedly received
information that the plaintiff had refused to undergo a myelo-
graphic diagnostic examination. Subsequent thereto, the plain-
tiff requested a hearing before the Industrial Commission, which
was held at Robbinsville, N. C., on 16 April 1973 before Deputy
Commissioner Delbridge.

The only evidence offered at the hearing was the testimony
of the plaintiff, which tended to show the following:

Several days after the accident, plaintiff went to the hos-
pital and was treated by Dr. Charles Van Gorder of Andrews,

N. C. He continued to see Dr. Van Gorder; and in December of 1971, Dr. Van Gorder suggested that the plaintiff see Dr. Watts, a specialist, in Asheville. Dr. Watts hospitalized the plaintiff on 7 February 1972, and the plaintiff remained in the hospital for approximately ten days. While in the hospital, plaintiff received information that the Highway Commission planned to take part of his property by eminent domain. Consequently, he and Dr. Watts agreed that it would be best for the plaintiff to go home and take care of his personal affairs before undergoing further treatment. On the day he left the hospital, Dr. Watts told the plaintiff that he would probably need to have an operation on his spine and that it would be necessary for the plaintiff to have a myelogram in order to locate the portion of his spine that would need surgery. While in the hospital, plaintiff also discussed having a myelogram with Dr. Ledbetter, a neurosurgeon. After the plaintiff left the hospital, he continued to be treated by Dr. Watts and Dr. Van Gorder. On 3 July 1972, the plaintiff was also examined by Dr. Richard Weiss, a neurosurgeon, in Asheville. Upon the suggestion of the Commission, the plaintiff was examined again by Dr. Weiss on 6 March 1973.

At the hearing, the plaintiff did not offer the expert medical testimony of any of his doctors. He testified that he was instructed by the Commission to bring to the hearing letters from his doctors rather than have the doctors testify in person. At least one letter, written by Dr. Van Gorder, was in the possession of the plaintiff at the hearing; and the plaintiff testified that Dr. Weiss had mailed a medical report to the Commission.

At the conclusion of the hearing, the proceeding was reset before Deputy Commissioner Leake for the "purpose of taking such medical evidence as either party desired to offer." However, at the second hearing on 23 October 1973, neither party offered into evidence any medical testimony. Rather, the plaintiff again stated that he had been instructed by the Commission to get medical evidence from his doctors in the form of letters and that he had done so. He stated that he had with him letters from Dr. Weiss and Dr. Van Gorder and that a report (apparently from Dr. Weiss) had been sent to the Commission in Raleigh. He also referred to the existence of a letter concerning Dr. Weiss that he had received from the defendant's attorney. (None of the letters or reports referred to by plaintiff at the two hearings was made a part of the record on appeal.)

Deputy Commissioner Leake, by order filed 6 November 1973, referred the case back to Deputy Commissioner Delbridge, who on 14 December 1973 filed his opinion and award in this proceeding. In his opinion and award, Deputy Commissioner Delbridge made the following pertinent findings of fact:

"Plaintiff was first seen and treated by Dr. Van Gorder of Andrews, North Carolina, on July 26, 1971. Plaintiff continued under the treatment of Dr. Van Gorder and was later referred to physicians in Asheville, North Carolina. He was hospitalized on February 7, 1972, in Asheville and was seen by Dr. Watts, Dr. Galloway, Dr. Ledbetter and Dr. Weiss. He remained in the hospital ten days and then left to go to his home as the State Highway Commission had issued condemnation proceedings against his property. Plaintiff was subsequently seen by Dr. Weiss of Asheville on July 3, 1972. Dr. Weiss and Dr. Ledbetter recommended a myelogram to determine if plaintiff's condition was being caused by a ruptured disc in the back. Plaintiff refused to have a myelogram carried out."

"Subsequent to the hearing held in Robbinsville, North Carolina, on April 16, 1973, the attorney for the defendant arranged an appointment with Dr. Richard E. Weiss of Asheville, North Carolina, to see and examine and treat the plaintiff in order to determine his medical problems. Such appointment being made for June 8, 1973. Plaintiff did not keep this appointment. Subsequent appointments were made, but the plaintiff failed to keep the appointments. Plaintiff refuses to submit to further examination and treatment offered by the defendant."

From the conclusion of Deputy Commissioner Delbridge that the plaintiff was entitled to additional compensation for temporary total disability from the latter part of February 1972 until 8 June 1973, the defendant appealed to the Full Commission. On 30 April 1974 the Full Commission affirmed and adopted as its own the opinion and award of Deputy Commissioner Delbridge. Defendant appealed.

*Hedrick, McKnight, Parham, Helms, Kellam & Feerick by Richard T. Feerick for defendant appellant.*

*No counsel contra.*

HEDRICK, Judge.

This appeal presents the question of whether the facts found support the conclusion that the "[p]laintiff is entitled to additional compensation for Temporary Total Disability from the last payment of compensation to him in the latter part of February 1972, to June 8, 1973, at the rate of $56.00 per week for such period."

G.S. 97-29, in pertinent part, provides: "[W]here the incapacity for work resulting from the injury is total, the employer shall pay or cause to be paid . . . to the injured employee *during such total disability* a weekly compensation. . . ." [Emphasis ours.]

G.S. 97-83, in pertinent part, provides:

"If the employer and the injured employee or his dependents fail to reach an agreement, in regard to compensation under this Article within 14 days after the employee has knowledge of the injury or death, or if they have reached such an agreement which has been signed and filed with the Commission, and compensation has been paid or is due in accordance therewith, and the parties thereto then disagree as to the continuance of any weekly payment under such agreement, either party may make application to the Industrial Commission for a hearing in regard to the matters at issue, and for a ruling thereon."

[1]   The stipulation entered into by the parties at the hearing conclusively established that the injury suffered by the plaintiff on 5 July 1971 was compensable; and the agreement entered into between the parties in August of 1971 established the defendant's liability to pay weekly compensation to the plaintiff for temporary total disability. However, when the defendant stopped making the payments for temporary total disability on 22 February 1972 and the plaintiff requested a hearing, the issue was raised as to whether the plaintiff was still disabled within the meaning of the Workmen's Compensation Act. While there is some evidence in the record that would support a finding that the plaintiff was disabled from 22 February 1972 until 8 June 1973, the Commission failed to make any findings of fact regarding plaintiff's disability during this period of time. Thus, the Commission's conclusion that the plaintiff is entitled to additional compensation for temporary total disability is erroneous.

Cape v. Forest Products Co.

[2] Additionally, defendant contends that the finding made by the Commission that "[p]laintiff refused to have a myelogram carried out" precludes a conclusion that plaintiff is entitled to additional compensation. G.S. 97-27, in pertinent part, provides:

"After an injury, and so long as he claims compensation, the employee, if so requested by his employer or ordered by the Industrial Commission, shall . . . submit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the Industrial Commission. * * * If the employee refuses to submit himself to or in any way obstructs such examination requested by and provided for by the employer, his right to compensation and his right to take or prosecute any proceedings under this Article shall be suspended until such refusal or objection ceases, and no compensation shall at any time be payable for the period of obstruction, unless in the opinion of the Industrial Commission the circumstances justify the refusal or obstruction."

The evidence contains many references to numerous letters and reports which we assume relate to the question of whether the plaintiff's right to compensation was suspended pursuant to G.S. 97-27, but these letters and reports were not made a part of the record on appeal. With respect to this matter, the record is skimpy, the evidence is confused, and the findings made by the Commission lack the necessary specificity to determine this critical issue.

Upon remand, the Commission must make findings of fact sufficient to determine (1) whether the plaintiff was disabled within the meaning of the Workmen's Compensation Act from 22 February 1972 until 8 June 1973; (2) whether the plaintiff's right to claim such compensation was suspended because he refused to submit himself to a myelographic examination requested by the defendant or ordered by the Commission; or (3) if he did refuse, whether such refusal was justified under the circumstances.

Vacated and remanded.

Judges BRITT and MORRIS concur.